IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:09-cr-84-WKW |
| | ) | |
| CURTIS JEROME MILLER | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court is the Motion to Suppress (Doc. #21) filed by Defendant Curtis Jerome Miller (Miller). On 13 July 2009, this Court held a hearing on Miller's Motion. On 21 July 2009, the Government filed a post-hearing brief (Doc. #34) and on 23 July 2009, Miller filed a Reply (Doc. #35). Miller seeks to suppress "any and all evidence seized by the government as a result of the stop of Mr. Miller's vehicle on May 21, 2009." (Doc. #21 at 1). Upon consideration of the Motion, the testimony at the evidentiary hearing, and the briefs, the undersigned RECOMMENDS the motion be DENIED.

**I.   BACKGROUND**

Based on the parties' briefs and testimony at the hearing held on 13 July 2009, and to a preponderance of the evidence,[1] the Court finds as follows:

On 21 May 2009, Deputy Joe Salter (Deputy Salter), of the Butler County Sheriff's Department, and a fellow deputy were monitoring southbound traffic on U.S. Interstate 65 in Butler County, Alabama. Miller's vehicle was traveling South in the left-hand lane when

---

[1] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

it passed Deputy Salter's unmarked police vehicle, which was located in the median of the Interstate. Deputy Salter observed Miller's vehicle (a red Chevrolet Tahoe) driving on the solid lane line located on the left hand side of the lane. Concerned that Miller may have been under the influence of alcohol or simply tired, Deputy Salter activated his video recorder and began to follow Miller and observe his driving. Deputy Salter followed Miller for just under six minutes before stopping Miller's vehicle. While following Miller, Deputy Salter observed Miller's vehicle driving on or crossing the vehicle lane lines several times. Miller's brother, Xavier Abney, testified that just before Deputy Salter stopped Miller's vehicle, Miller was looking down at his cellular telephone, the vehicle "veered," and then Miller corrected the vehicle.

After stopping Miller's vehicle Deputy Salter exited his patrol car and made contact with Miller, who was sitting in the driver's seat of the vehicle. Deputy Salter asked Miller for his driver's licence and informed Miller why he had been stopped. Miller offered that he had been talking on his cell phone while driving and gave the deputy two driver's licences, one from Florida and the other from South Carolina.

Deputy Salter took the licences back to his vehicle and called dispatch to retrieve information regarding the status of the licenses. Deputy Salter learned that both of Miller's licences were suspended. Deputy Salter again made contact with Miller and asked him to exit and walk to the back of the Tahoe. Deputy Salter performed a brief pat-down of Miller. Deputy Salter then explained to Miller that his licences were suspended and informed him

that he would be issued a warning ticket.

While issuing Miller the warning ticket, Deputy Salter asked Miller: "you don't have any guns or drugs or anything illegal in your car do you?"  Miller's replied "no sir, feel free to check if you want."  Deputy Salter said he had to first complete the warning ticket and asked Miller for information relating to the ticket, including his address, age, and the age of the vehicle.

After completing the ticket, Deputy Salter handed the ticket to Miller to sign, and when Miller handed the ticket back, Deputy Salter said something to the effect of "if you don't mind I'm going to have a search of your car," to which Miller agreed.  During the search of the Tahoe, the Deputy located approximately 1 kilogram of cocaine.

**II.    DISCUSSION**

Miller raises two arguments in support of suppression: (1) "Because the stop of Mr. Miller's vehicle was not based upon probable cause or information showing Mr. Miller had violated traffic laws, the stop was prohibited;" and (2) "[the Sheriff's Deputy] was prohibited from further questioning and detaining Mr. Miller and the vehicle after the warning ticket was issued."  Def.'s Motion to Supp. (Doc. #21) at 2 & 3.

**A.    The Vehicle Stop**

Miller argues that "police may only stop a vehicle if the totality of circumstances show that there is probable cause to believe occupant(s) have violated the law (i.e. committed a traffic violation or some other offense) . . . [and that] Mr. Miller was not violating any traffic

3

laws at the time his vehicle was observed or stopped by Deputy Salter . . . [and the deputy] had no cause to believe [Miller] was engaged in any illegal conduct." *Id*. at 2.

Although the Fourth Amendment protects from unreasonable searches and seizures, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," *Whren v. United States*, 517 U.S. 806, 810 (1996), or where police have a "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). In this case, the deputy claims to have stopped Miller's vehicle due to a traffic violation, thus the "probable cause of a traffic violation" standard applies.

Deputy Salter testified that he was monitoring the interstate for intoxicated or "careless" drivers. He also testified that he began following Miller's vehicle because the vehicle's tires were "running" on the lane line that is painted on the outside of the driving lane. The deputy followed and observed Miller for just less than 6 minutes and observed Miller driving on and crossing over the lane lines several times. The deputy testified he was concerned Miller may have been under the influence of alcohol or simply tired. Therefore, he decided to stop Miller and "check him out."

The Government argues that the deputy had probable cause to stop Miller because a traffic offense had occurred. Specifically, it points this Court to Ala. Code. § 32-5A-88, which states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such

4

movement can be made with safety." This statute has been interpreted to include crossing onto or over the lane lines. *See e.g., Holden v. City of Florence*, 665 So. 2d 1004 (Ala. Crim. App. 1995)(crossing center line is a violation of §32-5A-88). Miller admits that the video shows he at least touched the outside lane line however, he argues that Ala. Code. § 32-5A-88 is not a "strict liability offense" and points this Court to *Consolidated Freightways, Inc. v. Pacheco-Rivera*, 524 So. 2d 346 (Ala. 1988), for the proposition that a "reasonable man" standard applies and, as long as Miller's actions were reasonable and safe, no violation of § 32-5A-88 occurred.[2] *See* Def. Reply Brief (Doc. #35 at 2).

However, *Consolidated Freightways, Inc.*, is a civil case in which the Alabama Supreme Court, in order to determine whether a plaintiff had been contributorily negligent, decided whether a violation of § 32-5A-88 "*prima facie* constitutes simple negligence." *Id*. at 349 (internal quotations omitted). The Court concluded "that where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence *per se*." *Id*. at 530. While this case is instructive as to what negligence standard may be used in a civil case, its only value in the present matter can be found in that, while determining the negligence standard,

---

[2] Miller appears to be arguing a slight twist on the reasonableness test rejected by the Supreme Court in *Whren*. In *Whren*, the defendant argued that because total compliance with traffic laws is impossible, vehicle stops should be subject to a reasonableness test. 517 U.S. at 813. The Supreme Court rejected this argument saying "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id*. Here, Defendant is arguing that the traffic law itself (§ 32-5A-88) requires a reasonableness standard.

the Alabama Supreme Court assumed a violation of § 32-5A-88 had occurred where one of the vehicles had crossed the lane line.

Miller offers no other support for his claim that Alabama law requires a reasonableness test to find a violation under § 32-5A-88. Indeed, the Court could only find one Alabama case in which it appeared an attempt was made to include a reasonableness test in § 32-5A-88, and in that case it was rejected. In an unpublished memorandum, the Alabama Court of Criminal Appeals, apparently[3] upheld a violation of § 32-5A-88 where there occurred a "*single* 6-to-12 inch deviation from a driver's course across the 'fog line' and onto the shoulder of an interstate highway, under circumstances that [did] not appear to pose a safety risk to the driver or other motorists." *Galindo v. State of Alabama*, 949 So. 2d 951, 952 (Ala. Crim. App. 2005) (J. Shaw dissenting).

Further, there are several cases from this circuit in which vehicle stops involving Alabama traffic laws with these, or very similar facts, have been upheld. In *United States v. Cantu*, 227 Fed. App'x 783 (11th Cir. April 4, 2007), where the defendant was stopped for "swerving over the white fog line," the Court of Appeals for the Eleventh Circuit held that the Alabama police officer "observed a traffic violation, for which he could legitimately stop the van. The van crossed the white [fog] line, and [the officer] *had the duty* to further investigate whether the driver was impaired." *Id*. at *2 (emphasis added).

---

[3] The majority opinion was not written, thus the Court relies on the dissent's description of the facts of the case.

In *United States v. Johnson*, 136 Fed. App'x. 279 (11th Cir. June 16, 2005), the Government argued the Alabama deputy had probable cause to make a vehicle stop under § 32-5A-88, where the defendant was observed swerving over the lane lines. *Id*. at *282. There, the court stated that "[i]t does not matter whether he [violated § 32-5A-88]. While Johnson's violation of the lane-swerving statute was one reason that [the deputy] stopped him, a second reason was that [the deputy] was concerned that Johnson was sleeping or intoxicated. This, we have held in almost identical circumstances, is sufficient justification to stop a motorist." *Id*. (citing *United States v. Harris*, 928 F.2d 1113, 1116-17 (11th Cir. 1991) (finding that a law enforcement officer who saw a driver swerve into the emergency lane twice "was justified in stopping and detaining [the defendant] to determine whether he was drunk or falling asleep at the wheel")).

The Court finds that sufficient justification to stop Miller was established through: (1) Deputy Salter's testimony was that he saw Miller cross over and drive on the lane lines several times; (2) Miller's concession that the video shows him driving on the lane lines; (3) the video evidence which shows Miller crossing over and driving on the lane lines (in violation of § 32-5A-88); (4) Xavier Abney's testimony that just prior to being stopped Miller looked down at his cellular phone, the vehicle "veered," and then Miller corrected the vehicle; and (5) Deputy Salter's testimony that after observing Miller's vehicle he was concerned Miller may have been under the influence or tired.

Accordingly, the Court finds the stop of Miller's vehicle was permissible and Miller's

request for suppression based on this issue is due to be denied.

### B.     The Questioning

Miller concedes that consent was voluntarily given in this case, but that the deputy impermissibly prolonged the stop and requested consent after the traffic stop had been completed. The Government argues that Deputy Salter questioned Miller as to whether there were illegal drugs or firearms in his vehicle while the deputy was writing the warning ticket, and that Miller responded by volunteering that the deputy could search his vehicle.

Generally, "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. The traffic stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity. *Purcell*, 236 F.3d 1274 at 1277 (internal citations and quotations omitted). When Miller voluntarily consented to a search of his vehicle, "the remainder of the detention was consensual so long as the scope of the search did not exceed the consent given." *Purcell*, 236 F.3d at 1279 n. 8. "Thus, where the driver raises no issue concerning the scope or duration of the search, only the time period between the initial stop and the driver's consent is relevant to the reasonableness of the duration of the traffic stop."[4] *United States v. Gonzalez*, 275 Fed. App'x 930, 933 (11th Cir. 2008) (citing *Purcell,* 236 F. 3d at 1279); *United States v. Hernandez*, 418 F.3d 1206, 1209-10 (11th Cir. 2005) (reasoning that where a driver consents

---

[4] Because Miller does not attack the scope and duration of the search, the Court need not analyze whether the second consent was given during a consensual encounter.

8

to a search of her vehicle and does not challenge the duration of the search, "it is only the intermediate period of ... detention leading up to the consent to search that we must evaluate for constitutional reasonableness.").

Miller's only argument that the duration of the stop was impermissible is based on his belief that the deputy had essentially completed the ticket at the time the question was asked, and thus the portion of the stop just before consent was given was improper. Although the standard requires looking at the portion of the stop prior to when consent was given, because Miller is arguing the stop should have been over when consent was given, the Court reviewed the video to determine when the ticket had been completed in relation to when consent was given.[5]

The video shows that while writing the warning ticket, Deputy Salter began asking Miller questions about his suspended licences and at one point asked "you don't have any guns or drugs or anything illegal in your car do you?" Miller replied "no sir, feel free to check if you want." Thus, consent was given, and Miller's argument is that at this point the deputy was finished writing the ticket.

This argument is inconsistent with the video evidence, which clearly shows that the ticket was not complete at the time. Indeed, it appears to this Court that a substantial portion of the ticket had yet to be written. After consent was given, and while writing the ticket,

---

[5] At the hearing the parties stipulated that the video "speaks for itself" on this issue.

9

Deputy Salter asked Miller: (1) for his street address; (2) his age; and (3) the age of his vehicle. The video shows Deputy Salter consistently writing out the ticket for approximately two minutes and seventeen seconds *after* Miller voluntarily consented to the search.[6] At that point the deputy gave the ticket to Miller to sign.

The video and the testimony leave no question that the warning ticket, and hence the purpose of the stop, had not been completed at the time of the consent and that the questioning in no way prolonged the purpose of the stop. In total, only approximately eight minutes elapsed from the time Deputy Salter initially made contact with Miller and Miller's voluntarily consent. Approximately half of that time Deputy Salter spent in his vehicle receiving information from dispatch regarding Miller's suspended licences. The other four minutes Deputy Salter spent making contact with Miller and processing the ticket. Thus, this Court finds that no violation occurred between the time Miller was stopped and consent was given.

Accordingly, this court finds that the detention of Miller leading up to the voluntary consent was not unreasonable, and Miller's request for suppression based on this issue is due to be denied.

---

[6] This is contrary to Miller's contention at the hearing that while Deputy Salter appeared to have briefly written something on the ticket after consent was given, it was likely something similar to just finishing the "9" in "2009" and that the deputy was finished writing the ticket.

**III.   CONCLUSION**

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Miller's Motion to Suppress (Doc. #21) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before 9 September 2009**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 27th day of August, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE